**Andrew Lee JONES,**
**Petitioner–Appellant,**

v.

**John WHITLEY, Warden Louisiana**
**State Penitentiary,**
**Respondent–Appellee.**

No. 91–3608.

United States Court of Appeals,
Fifth Circuit.

July 20, 1991.

---

1. Circuit Judge of the Eleventh Circuit, sitting by designation.

See also 474 So.2d 919.

William P. Quigley, Nicholas J. Trenticosta, Loyola Death Penalty Resource Center, New Orleans, La., for petitioner-appellant.

Gwendolyn K. Brown, Doug Moreau, Asst. Dist. Attys., Baton Rouge, La., for respondent-appellee.

Before KING, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

■ In the early morning hours of February 17, 1984, Petitioner Andrew Lee Jones beat, raped and manually strangled to death eleven-year old Tumekica Jackson, the daughter of Jones's long-time girlfriend. He was convicted of first degree murder and sentenced to death on November 2, 1984. The instant application for a federal writ of habeas corpus, which was denied by the district court, is Jones's second. His previous federal habeas corpus petition, filed in the district court in March 1988, was rejected by this court in early 1989. *See Jones v. Butler*, 864 F.2d 348 (5th Cir.1988) (discussing pertinent state and federal procedural history to that date), *reh'g and reh'g en banc denied*, 868 F.2d 1271 (5th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989). Jones is presently scheduled to be executed between midnight and 3:00 a.m. on July 22, 1991. Jones has filed a notice of appeal and a motion for a stay of execution.[1] Although he has not yet formally filed with this court an "express request" for a certificate of probable cause, because of the proximity of Jones's execution, we elect to treat the notice of appeal as a request for a certificate of probable cause. *See* F.R.A.P. 22(b). We note that Jones

---

1. Jones's motion for a stay of execution is premised, in part, on the fact that the panel requested a copy of an affidavit referred to in the state's response to Jones's habeas petition in the district court. Jones notes that the affidavit was never filed with the district court, a fact which the panel ascertained, upon inquiry, after reviewing the affidavit. Precisely because the affidavit was not a part of the district court record, it has played no part in our decision. Jones's motion for a remand to the district court for an evidentiary hearing on this subject and/or for reassignment of the case to a different panel is denied.

filed an extensive request for such a certificate with the district court, and we have reviewed that request, together with all other material filed with the district court, carefully.

We may grant a certificate of probable cause to appeal only if a petitioner makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). The basic question posed in this case is whether, in the wake of *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), this second federal petition was properly denied as an abuse of the writ. Rule 9(b), Rules Governing 28 U.S.C. § 2254 Proceedings. For reasons to be explained, we conclude that it was.

## I. ADDITIONAL PROCEDURAL BACKGROUND

Jones's first federal habeas petition raised 18 grounds for relief, as discussed in our earlier opinion. *Jones v. Butler, supra.* One of Jones's contentions was that electrocution constitutes cruel and unusual punishment. Also included was the charge that Jones's trial counsel were constitutionally ineffective for eleven reasons, and it was specifically alleged that:

... (3) Counsel failed to investigate and present evidence on Jones's mental and physical condition at the time he gave his statements ...

(9) Counsel failed to have an independent psychiatric evaluation of Jones's mental condition and problems...."

*Jones*, 864 F.2d at 365. Jones's appellate brief to this court, filed May 3, 1988, asserted that

Counsel also failed to have Petitioner evaluated by a psychologist, thereby precluding his jury from considering mitigating evidence of his brain damage.

Jones obtained for his first federal habeas petition the affidavit of Dr. Brabham, a psychologist, that Jones was psychotic and suffered from transient psychotic episodes and organic brain damage. Based upon a thorough review of the trial court record, the federal district court and this court found that defense counsel's performance had a sound strategic footing and was not defective. The United States Supreme Court denied a writ of certiorari following this court's rejection of petitioner's first habeas petition. *Jones v. Butler*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).

On August 22, 1989, petitioner filed his second petition for post-conviction relief in Louisiana state court, prominently asserting that he suffers from substantial mental defects including brain damage and dysfunction, psychosis and borderline retardation, which existed both before and at the time of the offense. According to the 1989 petition, Jones's defense counsel at trial concluded that "petitioner's mental condition prior to and at the time of the offense would be the most significant factor at his penalty phase trial." Defense counsel Price was aware that Jones had a longstanding history of alcohol and drug abuse that had likely affected both his mental condition and his commission of the offense. Attached to that petition were neurological and neuropsychological evaluations conducted by two experts, both of whom related a medical history including drug and alcohol abuse, migraine headaches, several head injuries, and numerous consultations for his insomnia, anxiety and depression. Dr. Merikangas reported on June 30, 1989, that Jones had previously been medicated with Haldol, Sinequan, Elavil, Vistaril, and Thorazine. His report refers to a March 5, 1984 psychiatric evaluation in which it was noted that Jones suffered from auditory hallucinations "telling him to do 'wrong things or to hurt himself, tell him he was no good.' The Sinequan and Thorazine were prescribed on that visit." Dr. Zimmerman, a clinical psychologist who conducted objective neuropsychological testing on Jones for the 1989 petition, reported that Jones had been treated with Haldol, Vistaril, Ascenden, Sinequan, Elavil, and Thorazine. Dr. Zimmerman also reported that ... "[I]n January, 1981 depression and anxiety were noted. In April 1981 insomnia and anxiety were noted and Sinequan was prescribed. In 1981

he was described as depressed and Ascenden was prescribed. In 1984 a Psychiatric Evaluation was performed which reports auditory hallucinations and suicidal thoughts."

Jones contended in the 1989 petition that he was denied the use of potentially exculpatory psychiatric testimony because the public defender's office which represented him was chronically underfunded and unable to provide expert evaluation and testimony for his capital trial. This claim was rejected by the Louisiana habeas court, which observed that if either of his trial counsel had any doubts as to the mental incapacity of their client they had the authority to request a mental examination pursuant to La.Code of Crim.P. arts. 641–649.1. Louisiana law permits the convening of a sanity commission to which doctors are appointed to examine the defendant and report their findings on his competency to stand trial, his ability to distinguish right from wrong at the time of the offense, or if he was under the influence of extreme mental or emotional disturbance or was impaired as a result of mental disease or defect which could serve as a mitigating circumstance during the penalty hearing. Defense counsel had not requested the appointment of a sanity commission.

Without ruling on the mental illness claim, and therefore inferentially rejecting it, the Louisiana Supreme Court subsequently reversed the denial of habeas relief to Jones and remanded the case to the trial court solely for a hearing on an unrelated *Batson* ground. *State ex rel. Jones v. Butler,* 547 So.2d 730 (La.1989). Relief was again denied on remand to the trial court.

Jones's third state habeas petition was filed July 10, 1991, twelve days before the presently scheduled execution date. His first claim in this petition is that the state concealed from Jones's trial and habeas counsel the information that he was being treated with psychotropic drugs while jailed prior to and during his capital trial. Counsel additionally may be saying that jail physicians had diagnosed Jones as psychotic, but this appears to an inference from

the fact that he was medicated. His other three claims relate to the constitutionality of Louisiana's use of its electric chair. The state courts denied relief without written orders, and the federal district court has denied Jones's application for § 2254 relief, denied a stay of execution, and declined to grant a certificate of probable cause. Jones has filed a notice of appeal and a motion for certificate of probable cause.

## II. STANDARD OF REVIEW

Because this is a successive application for federal writ of habeas corpus, we must decide, before proceeding to the merits, whether it represents an abuse of the writ pursuant to Rule 9(b). The Supreme Court has recently held that "the same standard used to determine whether to excuse state procedural defaults should govern the determination of an excusable neglect in the abuse of the writ context." *McCleskey,* 111 S.Ct. at 1468. Thus, a petitioner's serial habeas petition must be dismissed as an abuse of the writ unless he demonstrates that there was "cause" not to have raised the points in a previous federal habeas petition and "prejudice" if the court fails to consider the new points. *See Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). The Court explained its standard as follows:

In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. *Murray v. Carrier,* 477 U.S. [478] at 488 [106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)]. Objective factors that constitute cause include " 'interference by officials' " that makes compliance with the state procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id.*

111 S.Ct. at 1470. After the state raises the issue of writ abuse, the petitioner bears the burden of showing cause and prejudice. No evidentiary hearing is required if the district court determines as a matter of law

that the petitioner cannot satisfy this standard. Even if the petitioner cannot show cause for not raising his claims in an earlier petition, the court may nonetheless entertain the serial petition to prevent a fundamental miscarriage of justice. *Id.* at 1470–71. A "fundamental miscarriage" implies that a constitutional violation probably caused the conviction of an innocent person, although the precise meaning of "innocence" in this context has not been fully explained by the Court. *McCleskey,* 111 S.Ct. at 1475; *Cuevas v. Collins,* 932 F.2d 1078, 1082–83 (5th Cir.1991).

In examining "cause" for a petitioner's delay in raising a habeas claim, *McCleskey* held:

> The requirement of cause in the abuse of the writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition. If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in the federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim.

111 S.Ct. at 1472.

We must apply *McCleskey* separately to each of Jones's two types of claims.

## III. THE ADMINISTRATION OF PSYCHOTROPIC MEDICATION BY THE STATE

■ Petitioner earnestly contends that neither he nor his counsel were aware that, during his incarceration leading up to and through his capital murder trial, he was being regularly administered Thorazine, an anti-psychotic drug, and Sinequan, an anti-depressant, by jail authorities. This information was allegedly deliberately concealed from them by the state, notwithstanding defense counsel's written *Brady* requests for production of all exculpatory evidence. Given this information, counsel contends, Jones would have requested a sanity commission and would have been able to procure powerful psychiatric mitigating evidence.

According to Jones, the gravamen of his new claim is that the state's failure to disclose the evidence of psychotropic medication was an "objective factor external" to Jones and his counsel, caused by "interference by officials," *McCleskey,* 111 S.Ct. at 1470, such that "cause" for this second petition exists. "Certainly," he contends, "the state may not use as a bar to a claim the underlying facts of the claim itself … The hiding [of evidence] *is* the legal claim …" (emphasis added).

We are not persuaded that Jones made a substantial showing that the state's action interfered with Jones's ability to raise the *Brady* claim in his first federal habeas petition. Our review of Jones's court filings over the years demonstrates that his counsel were at every stage of the proceedings at least on notice of his mental problems. In the first federal habeas petition, Dr. Brabham described Jones as probably psychotic at the time of the murder and hypothesized that his condition derived from drug and alcohol abuse which had caused organic brain damage. Defense counsel's affidavit with the 1989 state habeas petition averred that he knew the significance of Jones's problems in 1984 and was only prevented by the underfunding of his defender's office from investigating them further. The expert medical affidavits attached to the 1989 state habeas petition refer to Jones's substantial pre-crime mental problems, head injuries, medication with drugs such as Sinequan, and to a 1984 auditory hallucination episode. Given this background knowledge and counsel's experience as public defenders, defense counsel knew or with reasonable diligence could have found out that Jones was under constant psychotropic medication at the jail.

The abundant signposts of Jones's mental problems at the time of the offense and at the time of the first habeas petition disprove his allegations of "cause" under *McCleskey.* The Supreme Court made clear that "cause"

"requires a showing of some external impediment *preventing* counsel from constructing or raising a claim. *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2648 [91 L.Ed.2d 397] (1986). For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim. . . .

*McCleskey*, 111 S.Ct. at 1472. Had counsel examined Jones in depth about his medication and consulted with jail authorities or with outside experts, the nature of his medication would have come to light. *Compare Amadeo v. Zant*, 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988) (finding cause due to official interference where an undated, unsigned memorandum surfaced in unrelated litigation that showed surreptitious attempts to exclude blacks from the jury system). The state did not prevent Jones from investigating a potential *Brady* claim for his psychotropic medication.

Reinforcing our conclusion that the state's alleged actions are not cause for omitting his mental illness claims, *McCleskey* points out, in an excerpt quoted above, that the filing of a serial habeas petition will not be excused simply because evidence discovered by the petitioner after the first filing would have supported or strengthened a claim. Jones raised other *Brady* claims and ineffectiveness claims in his first federal habeas petition, the latter directly relating to counsel's failure to investigate psychiatric evidence. Although Jones characterizes the evidence of psychotropic medication while in jail as an independent *Brady* claim, it might also be characterized simply as new evidence supporting the claims he had already discovered. Even if viewed from this perspective, *McCleskey*'s analysis forecloses a finding of "cause." *See McCleskey*, 111 S.Ct. at 1475.

## IV. THE ELECTROCUTION CLAIMS

■ The second, third and fourth claims raised by Jones relate to the constitutionality of electrocution as a method of carrying out his death penalty. He asserts that he will remain conscious during the execution and will be unnecessarily tortured; that execution in Louisiana's electric chair, which is alleged to be currently malfunctioning, constitutes cruel and unusual punishment; and that Louisiana, by its recent legislative decision to adopt lethal injection rather than electrocution, has declared death by electrocution indecent and inhumane under the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). These claims are clearly barred by the *McCleskey* cause and prejudice test, for the facts on which they rely have, with the exception of the information about alleged malfunctions in the electric chair and the new Louisiana law, been readily ascertainable for years. Jones raised the same general issue in his first federal habeas petition, and it was rejected. His complaints about the malfunctioning of Louisiana's electric chair do not show that it is inoperable or any more inhumane than it ever was when previous constitutional challenges were rejected. Further, the Louisiana legislative determination carries no independent weight in an eighth amendment analysis, because even if it represented an effort toward a perceived humanitarianism in the infliction of the death penalty, the states remain widely divided over the preferred means of execution. Numerous states still use the electric chair. NAACP Legal Defense Fund, *Death Row U.S.A.* (Jan.1991).

## V. THE "FUNDAMENTAL MISCARRIAGE OF JUSTICE" EXCEPTION TO *McCLESKEY*

■ Overarching Jones's arguments that he has not abused the writ is the contention that the ends of justice will be served only if this court reaches the merits of his newly formulated contentions. Thus, he adverts to the "fundamental miscarriage of justice" test in *McCleskey*, which would permit consideration of his claims if they would likely result in a finding of "actual innocence." *See Cuevas*, 932 F.2d at 1082–83. The circumstances of this case do not suggest

that Jones's sentence will work a fundamental injustice. Jones no longer denies that he raped and murdered Tumekica Jackson. His use of mental illness as a defense or mitigating factor was raised years after trial and, on the record before us, suffers from internal inconsistencies.

For these reasons, Jones's second federal habeas petition constitutes an abuse of the writ. He has failed to make a substantial showing of the denial of a federal right. We do not reach the merits of his claims.

The petitioner's Motion for Appeal In Forma Pauperis is *GRANTED;* the Request for Certificate of Probable Cause is *DENIED;* the Motion for Stay of Execution is *DENIED.*