IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3352

_____

LARRY HUDSON,

Petitioner-Appellant,

versus

JOHN P. WHITLEY, Warden,
Louisiana State Penitentiary, Et Al.,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

(December 10, 1992)

Before POLITZ, Chief Judge, WILLIAMS and DUHÉ, Circuit Judges.

PER CURIAM:

Larry Hudson is serving a life sentence in the Louisiana State Penitentiary as a result of his December 2, 1967, conviction for first degree murder. Pro se and in forma pauperis, he appeals the district court's dismissal for abuse of the writ of this successive federal habeas corpus petition. See Rule 9(b) of the Rules Governing § 2254 cases. Maintaining his innocence throughout, Hudson contends that his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were violated almost twenty-five years ago by the state's suppression of crucial evidence favorable to the defense--namely evidence that the state's only eyewitness, and linchpin of its case, originally

identified someone else as a participant in the armed robbery and murder, and that person had been arrested.

Contrary to the district court, we conclude that Hudson had good cause for failure to make his claim earlier. We remand to the district court for its determination as to prejudice resulting from his being unable to raise the critical issue earlier. Moreover, we hold the district court should reconsider its alternative decision dismissing Hudson's petition on the merits because of later case developments. We remand for these purposes.


## I.   FACTS AND PRIOR PROCEEDINGS

In the early morning hours of May 15, 1967, Oscar Meeks, the manager of a New Orleans service station, was held at gunpoint in an attempted robbery. Frank Wilson, his assistant and the only eyewitness, testified that three men entered the small, but well-lighted office of the station where Meeks and Wilson were working. One of the three men inquired as to the cost of repairing a flat tire. When Meeks answered, one of the trio later identified by Wilson as Hudson, drew a gun and demanded money. Meeks resisted, and in the melee that followed, Meeks was pushed through the office door and shot. Wilson testified that at this point he ran from the office through a side door. He went about a block and a half but then returned to the station. When he arrived, two of the robbers had fled, and Meeks, wounded, was holding the other robber, later

2

identified as John Duplessis, at gunpoint.  Meeks subsequently died from the gunshot wound.[1]

In Hudson's motions filed prior to his 1967 first degree murder trial, he sought disclosure of, among other things, the number and identities of any persons arrested in connection with the crime as well as the identity of any such persons released after the investigation.[2]  Further, Hudson filed a "Motion for Oyer" in which he sought "copies of police report of investigation made in this case."  The state refused to furnish any information in response to Hudson's motions for bill of particulars as well as his "Motion for Oyer."[3]

---

[1]  The only other state witness testified that he was walking in the vicinity and heard some gunshots.  However, he did not get a clear view of the two men who fled the scene.

[2]  In his motions for bill of particulars, Hudson specifically inquired:

> 6.  How many persons were arrested in connection with the crime charged herein; and give their names and addresses.
>
> 7.  Of the persons who were arrested for this crime, any released after investigation?  If so, whom?
>
> 8.  Were any statements or confessions, inculpatory or exculpatory, written or oral, given to the police by any co-defendants that implicated the defendant, Larry Hudson?  If so, by whom and when?
>
> 9.  Disclose herewith any and all evidence held by the police or the district attorney's office which may be favorable to the defendant.

[3]  The Louisiana Supreme Court ultimately held that the bill of particulars motions were too broad, seeking state's evidence which in essence was an attempt at pretrial discovery which, with

At trial, the state presented only Wilson's testimony to identify Hudson as the man who shot Meeks during the attempted armed robbery. Wilson's alleged identification of Hudson was contested at trial. During trial, Wilson testified that he had identified Hudson at pretrial lineup held five days after the crime. Yet, Officer Clement DeSala testified he was present at the lineup but that Wilson did not make an identification at that time. The state failed to disclose to Hudson prior to trial that Wilson had been unable to pick him out of a live lineup.

Perhaps in an effort to assuage the anticipated damage, the district attorney, a day before the trial, conducted a photographic spread before Wilson. The state displayed two photographs to Wilson, one was of Hudson and the other was of the co-defendant who was tried with Hudson. There were no photographs of anyone not implicated in the robbery. At trial, Wilson testified that when asked if he recognized the men in the photographs, he replied that he did. Further, Wilson made an in-court identification of Hudson.

Ultimately, Hudson was convicted of first degree murder by a Louisiana jury and sentenced to death. His death sentence was later commuted to life imprisonment. In 1969, the Louisiana

---

the exception of written confessions, generally was not permissible in Louisiana. State v. Hudson, 253 La. 992, 221 So.2d 484, 491 (1969), cert. dismissed, 403 U.S. 949, 91 S.Ct. 2273, 29 L.Ed.2d 855 (1971). With regard to the "Motion for Oyer," the Court concurred with the state, citing to the well-defined exception to the Public Records Act in effect at the time, which exempted police records from its provisions, as well as to Louisiana jurisprudence which established as privileged all evidence relating to a pending criminal trial in the possession of the district attorney or the police. Id. at 492.

Supreme Court affirmed Hudson's conviction.  State v. Hudson, 253 La. 992, 221 So. 2d 484, 492 (1969), cert. dismissed, 403 U.S. 949, 91 S.Ct. 2273, 29 L.Ed.2d 855 (1971).  Consequently, Hudson began his attempts at vindication in the state courts.  On at least three occasions, Louisiana courts denied Hudson habeas relief.  See, e.g., State ex rel. Hudson v. Henderson, 262 La. 314, 263 So.2d 48 (1972); State ex rel. Hudson v. Henderson, 294 So.2d 545 (La. 1974); State ex rel. Hudson v. Maggio, 337 So.2d 872 (La. 1976).

After properly exhausting his state remedies, Hudson sought relief from the federal courts.[4]  In his first federal habeas petition, Hudson claimed that he was serving an illegal sentence. The district court dismissed that action without prejudice on November 30, 1973.  Hudson subsequently filed a notice of appeal and a request for a certificate of probable cause which was denied. On March 25, 1974, his appeal was dismissed.  In his second habeas petition, dated November 26, 1974, Hudson raised grounds of illegal jury composition and denial of the right to confront witnesses.  On April 16, 1975, a United States Magistrate recommended dismissal. Soon thereafter, the district court denied the relief sought; no appeal was taken.

---

[4]  In its memorandum opinion, the district court set out the history of Hudson's federal habeas petitions.  The state papers which accompany this case do not contain Hudson's federal habeas proceedings and Hudson, pro se, does not provide a detailed history of his previous federal filings in his current habeas petition. Hudson does, however, adopt the district court's history in his appellate brief.  Further, the state generally agrees that Hudson has not raised the claim now made in his petition in a previous petition.

On March 24, 1977, Hudson filed his third federal petition for habeas corpus. He contended the inappropriate use of a photographic lineup, the prosecutor's knowing use of perjured testimony, the improper denial by the trial court of a motion to sever, the improper admission of certain evidence, and the ineffective assistance of counsel. On December 29, 1977, the district court adopted the magistrate's recommendation that the petition be dismissed with prejudice. This Court affirmed the district court's dismissal. See Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980).

We agreed with Hudson's assertion that the photographic identification procedure employed was impermissibly suggestive (where a day before trial Wilson was presented with only two photographs in a photographic spread). We found, however, that under the "totality of circumstances" present in the case, "there was no substantial likelihood of misidentification." 601 F.2d at 788. Further, we also found that the conflict in testimony regarding the lineup (in which Wilson failed to identify Hudson and then testified otherwise) had a direct bearing on Wilson's credibility, and was therefore, material evidence. We concluded, however, that the error was harmless because the jury had been adequately presented with the conflicting information. Id. at 789.

In 1984, the Louisiana Legislature amended its Public Records Act, La. Rev. Stat. Ann. § 44:3 A(4), to provide that the initial report of the investigating police officer or officers is a public

6

record and subject to disclosure regardless of its investigative content. Subsequently, the effect of the amendment was suspended by legislative resolution until August 31, 1986. See State v. McDaniel, 504 So.2d 160, 161 (La. Ct. App. 1987). Pursuant to this amendment, Hudson obtained copies of the police reports which showed that Wilson, whose testimony constituted virtually the sole evidence used to convict Hudson, initially picked a man named Larry Jones from a photograph display as a participant in the attempted armed robbery. The report also disclosed that Wilson was unable to identify Larry Jones as one of the robbers after a physical lineup was held.[5] Subsequently, Hudson once again initiated state post-conviction proceedings. His state application for relief ended with the Louisiana Supreme Court's habeas petition denial on May 18, 1990. State ex rel. Hudson v. Butler, 561 So.2d 112 (La. 1990).

---

[5] Although there are two relevant police reports, the evidence that Hudson asserts is exculpatory is detailed in the first report prepared by Sgt. Larry Vigurie. According to the report, on May 15, 1967, the same day as the aborted robbery, a photographic lineup identification by eyewitness Frank Wilson named Larry Jones as one of the three robbers. This lineup was prompted by John Duplessis' statement to the police during the initial investigation that one of the participants was a male by the name of Larry Jones. According to the report, the police collected several photographs of "Larry Joneses" which were then shown to Wilson who identified one of them as one of the suspects. The Larry Jones identified was subsequently arrested. At the physical lineup held the following day, however, Wilson was unable to identify any of the men as a participant--not even Larry Jones. Larry Jones was released and no mention was made of this lineup during any of the proceedings. The Vigurie report further states that after Meeks' death on May 17, Duplessis recanted his earlier identification of a Larry Jones and implicated Hudson instead.

7

On January 10, 1991, Hudson filed this, his fourth, federal habeas petition asserting that his due process rights under <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963),[6] were violated by the state's suppression of the evidence favorable to the defense contained in the police reports. The district court dismissed Hudson's petition as successive under Rule 9(b). Employing the abuse of the writ test applicable at the time of its decision, the district court found that Hudson failed to establish by a preponderance of the evidence that he had not abused the writ. <u>See</u> <u>Brown v. Butler</u>, 815 F.2d 1054, 1057 (5th Cir. 1987) ("[o]nce the 9(b), abuse of the writ, claim has been raised either by the government or sua sponte, the burden then shifts to the petitioner to answer the allegation and prove by a preponderance of evidence that he has not abused the writ"); <u>see also</u> <u>Jones v. Estelle</u>, 722 F.2d 159, 164 (5th Cir. 1983) (en banc), <u>cert. denied</u>, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984).

The court found that "Hudson [had] ample opportunity commencing with his first attempt at <u>habeas corpus</u> relief in 1973 to present to this Court the State's failure to provide allegedly exculpatory information pursuant to the holding in <u>Brady</u>."

---

[6] In <u>Brady</u>, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a <u>Brady</u> violation, the defendant must prove the following: (1) that the prosecution suppressed evidence, (2) that the suppressed evidence was favorable to the accused, and (3) that the suppressed evidence was material either to guilt or to punishment. <u>United States v. Ellender</u>, 947 F.2d 748, 756 (5th Cir. 1991).

8

According to the court, even "[h]is subsequent obtainment of the police report pursuant to a legislative amendment [could not] serve as the basis for the granting of relief in light of the numerous opportunities provided to him, even without knowledge of this alleged exculpatory information, to present the underlying issue of nondisclosure." Alternatively, the court held that the claim lacked merit. Specifically, the district court concluded that although the information regarding Wilson's prior identification of a suspect in a photographic lineup should have been disclosed to the defense since it would have had a bearing on Wilson's credibility and his ability to identify Hudson, the information failed to overcome the materiality test enunciated in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985),[7] and, thus would not have changed the outcome of the trial.

To support its reasoning, the district court looked to our holding in Hudson's third federal habeas petition. Although we found that the prosecution was under an affirmative duty to disclose the controversy surrounding the pretrial identification, we held that this breach of prosecutorial obligation did not require reversal. Blackburn, 601 F.2d at 789. Relying upon our finding on the prior nondisclosure issue in the third petition, the

---

[7] The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.

9

district court held that reversal was unjustified on the evidence in this petition.

Thus, the district court dismissed Hudson's fourth petition with prejudice, holding that it was barred under Rule 9(b)[8] and alternatively, that his claims were meritless. Hudson was granted a certificate of probable cause and appeals.

## II. DISCUSSION

### A. Basic Issues

Hudson contends that the district court abused its discretion in dismissing his petition. He asserts that, contrary to the court's determination, he could not have brought the <u>Brady</u> claim earlier since he was unaware of Wilson's identification of and the arrest of Larry Jones until he obtained a copy of the police reports in 1988 in connection with a state post-conviction proceeding.

The district court's decision to dismiss Hudson's petition under Rule 9(b) lies within its sound discretion, and will be reversed only for an abuse of that discretion. <u>Schouest v.</u>

---

[8] Rule 9(b) provides that:

> A second or succeeding petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

10

_Whitley_, 927 F.2d 205, 207 (5th Cir. 1991) (superseding _Schouest v. Smith_, 914 F.2d 713 (5th Cir. 1990)).

In 1991, the Supreme Court decided _McCleskey v. Zant_, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), on abuse of the writ which goes substantially beyond simply requiring proof of a persuasive reason for earlier failure to raise the issue. In _McCleskey_, the Court held that the cause and prejudice test applicable to cases of procedural default enunciated in _Wainwright v. Sykes_, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), is applied also "to determine if there has been an abuse of the writ through inexcusable neglect." _McCleskey_, 111 S.Ct. at 1470. Claims raised for the first time on a second or subsequent habeas petition will be dismissed as an abuse unless the petitioner can show cause for the failure to raise the claim in an earlier habeas petition, but the petitioner is also permitted to show prejudice resulting in a lack of fundamental fairness in the trial. Nonetheless, even if the petitioner cannot satisfy the cause and prejudice standard, courts may still entertain a serial petition to prevent a "fundamental miscarriage of justice." The "miscarriage of justice" exception applies only to "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." _Id_.

_McCleskey_ is applied retroactively. _See_ _Russell v. Collins_, 944 F.2d 202, 205 (5th Cir.) (per curiam) (finding that "[a]s [the _McCleskey_] standard applies here only to procedure in the habeas review, retroactive application of the standard is not at issue"

11

and, thus applying McCleskey), cert. denied, __ U.S. __, 112 S.Ct. 30, 115 L.Ed.2d 1112 (1991); Woods v. Whitley, 933 F.2d 321, 323 (5th Cir. 1991) (stating that "[a]lthough this case was decided by the district court prior to the issuance of McCleskey, the procedure the court followed and the result it reached comport with that case").[9]  We apply the cause and prejudice standard in the evaluation of this petition by Hudson.

## B. Failure to Make Claim Earlier

The state must satisfy its initial burden of pleading an abuse of the writ.  This burden is satisfied if the state notes the petitioner's prior writ history with clarity and particularity, identifies claims which appear for the first time in the later petition, and alleges abuse by the petitioner.  To disprove the state's claim of abuse, the petitioner must show cause for failing

_____

[9]  Other Courts that have addressed this question have made comparable determinations as to retroactivity.  See, e.g., Harris v. Vasquez, 949 F.2d 1497, 1512 (9th Cir. 1990) (finding that it did "not believe the expression of the abuse of the writ standard announced in McCleskey creates a new rule precluding its application to pending cases"), cert. denied, __ U.S. __, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); Andrews v. Deland, 943 F.2d 1162, 1172 n.7 (10th Cir. 1991) (stating that it would "apply McCleskey to this case on collateral review, because McCleskey involves a clarification of a procedural rule, not a change in substantive law.  It may therefore apply retroactively."), cert. denied, __ U.S. __, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); United States v. MacDonald, 778 F.Supp. 1342, 1357 (E.D.N.C. 1991) (holding that McCleskey represents a "refinement of existing law rather than a statement of new law" meriting retroactive application), aff'd, 1992 WL 115662 (4th Cir. June 2, 1992) (No. 91-6613).  But see Harris, 949 F.2d at 1541-43 (Reinhardt, J., dissenting) (stating that "[t]he majority's procedural ruling regarding the retroactivity of [McCleskey] is just plain wrong. . . . [A] proper application of [Teague's] criteria would preclude the retroactive application of [McCleskey]").

12

to raise the claim earlier. To establish cause, the petitioner must show that some "external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." In essence, "the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." McCleskey, 111 S.Ct. at 1472.

The state presents several contentions to bolster its assertion that Hudson has failed to show justification under McCleskey for his failure to present the claim earlier.[10] Its primary contention is that Hudson fails to establish cause because the passage of the 1984 amendment to La. Rev. Stat. Ann. § 44:3 was irrelevant. The state asserts that the amendment makes available to a criminal defendant only the initial police reports whereas the information that Hudson used to formulate his Brady claim is contained in supplementary reports. Further, the state contends

_____

[10] At times, the state appears to mix an abuse of the writ issue, which involves a claim raised for the first time in a subsequent petition, with a successive petition issue, which involves a claim which has been raised and reached on the merits in an earlier habeas petition. See Sawyer v. Whitley, 945 F.2d 812, 815-16 (5th Cir. 1991), aff'd, 1992 WL 135565 (U.S. June 22, 1992) (No. 91-6382). By way of example, the state refers to Hudson's acknowledgement that a similar issue to that on appeal was taken to the United States Supreme Court on direct appeal years ago though the police reports which supported the suppression claim were, at that juncture, unavailable. However, the state then sets out the McCleskey standard which articulates a test for an abuse of the writ assertion, and focuses exclusively on an abuse of the writ theory. Further, the district court dismissed Hudson's contention as an abuse of the writ. Consequently, we address Hudson's claim as raising solely an alleged abuse of habeas issue.

13

that the 1984 amendment to Louisiana's Public Records law notwithstanding, Hudson could have "pressed this claim in his first federal habeas petition filed in 1973." According to the state, federal constitutional principles as well as Louisiana jurisprudence would have supported disclosure of any Brady evidence irrespective of the amendment.

We respond to the state's arguments on three grounds. First, and most critically, taking the state's police report labeling argument to its logical progression, the reporting officer or officers could simply defeat the purpose of the statute by including only selected, non-probative information in the initial report. The remainder, more substantive and perhaps exculpatory information, could then be included in subsequent supplemental reports. See, e.g., State v. Shropshire, 471 So.2d 707, 708-09 (La. 1985) (the New Orleans Police Department's entitling its first report by the officers investigating a complaint an "incident report" rather than an "initial report" constitutes mere labeling and does not remove the report from the statute's scope).

Second, the amended public records provision defines an initial report as including, among other things, "[t]he name and identification of each person charged with or arrested for the alleged offense." La. Rev. Stat. Ann. § 44:3(A)(4)(b)(ii) (emphasis added). Thus, under the literal wording of the statute, Hudson was entitled to the information which supports his claim since he, in essence, sought the identification of a person arrested for the alleged offense.

14

Nonetheless, we find that Hudson was entitled to the information regardless of the police report. The state contended that the amendment is irrelevant. We agree but for a wholly different reason. The state asks us to ignore the pivotal fact that it suppressed Brady evidence despite repeated attempts by petitioner to obtain such evidence. Regardless of the statute, the state was obligated to disclose this evidence favorable to the defense.[11]

We conclude that Hudson has successfully met McCleskey's cause requirement. Regardless of the diligence and reasonableness Hudson utilized in his prior habeas petitions, "external impediment[s]" existed. McCleskey, 111 S.Ct. at 1472. Crucial factors external to his defense, "the reasonable unavailability of the factual basis for the claim" as well as "government interference" (by the state's nonfeasance), prevented him from discovering the claim he now raises.

_____

[11]  As to the state's contention that federal and state constitutional jurisprudence would have supported disclosure of any Brady evidence irrespective of the Public Records law, and thus he could have pressed this claim in his first habeas petition filed in 1973, we first note, as set out above, Hudson's repeated futile attempts for access to exculpatory information before the trial through his motions for bill of particulars and his "Motion for Oyer." Further, the state asserts that the Louisiana trial court had the power to order the production of such evidence. But Hudson made many unsuccessful pleas to the state court. Finally, as to the specific claim that Wilson's initial identification of another suspect and his subsequent arrest could have been ferreted out by Hudson runs into Hudson's poignant contention that he "is not clairvoyant."

15

## C. Showing of Prejudice

The state never reached the prejudice inquiry, McCleskey's second requirement. According to the state, Hudson lacked cause for its failure to raise the nondisclosure claim in his three prior federal habeas petitions. So under McCleskey, it contends that we need not consider whether Hudson would be prejudiced by his inability to raise the alleged disclosure violation at such a late date. Since we find that Hudson has demonstrated sufficient cause, we must remand to the district court to consider prejudice.

## D.  Merits

The district court alternatively ruled that absent the applicability of Rule 9(b), Hudson's grounds for relief were meritless. In its determination, the district court conceded that the information concerning Wilson's prior identification of Larry Jones should have been disclosed since it bore on Wilson's credibility and ability to identify Hudson. Nonetheless, it concluded that the information was not sufficiently material under Bagley, and would not have changed the trial's outcome.

To establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Cordova v. Collins, 953 F.2d 167, 171 (5th Cir. 1992). Brady's third factor, materiality, may now be impacted by the heightened awareness of the prejudice issue emphasized by McCleskey. McCleskey is procedural only, but a finding of prejudice under it makes it at least more difficult to

16

find lack of materiality under <u>Bagley</u>, although we recognize that the two evaluations are not identical.  Inasmuch as the district court did not have the benefit of <u>McCleskey</u> when it ruled, we remand its decision on the merits as well.

### III.  CONCLUSION

We conclude that the district court erred in its determination that Hudson's habeas petition was barred under Rule 9(b) for failure to raise the critical issue at an earlier time.  We remand for the court to decide whether the requisite prejudice was shown to justify granting the writ as against the Rule 9(b) assertion. Further, we remand for the court to reconsider its alternative dismissal of Hudson's petition on the merits.

REMANDED.

JERRE S. WILLIAMS, Circuit Judge, dissenting in part:

I can see no justification at all to remand this case to the district court.  It is true that the court did not consider the issue of prejudice.  But on this record the evidence concerning the prejudicial nature of the faulty identification of the accused is overwhelming.  The government's case relied virtually entirely upon the identification.

The majority of the Court remands the case for a consideration of the issue of prejudice as it applies to the abuse of the writ claim and also for the district court to reconsider its alternative determination denying the writ. I evaluate those issues in my conclusion that there should be no remand.

First, the issue of prejudice must be considered as it relates to abuse of the writ for failure to make the claim at an earlier time. Of course, I agree with the Court's conclusion that there was good cause for failure to have raised the issue earlier. By way of dissent, I then go on to show why I feel there is no need to remand on this issue of prejudice.

Although Wainwright v. Sykes did not give "precise content" to the definition of prejudice, 433 U.S. at 91, 97 S.Ct. at 2508, later cases have interpreted the petitioner's burden of proving actual prejudice as showing "`not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)) (emphases in original). Stated in another way, "[s]uch a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied `fundamental fairness' at trial." Murray, 477 U.S. at 494, 106 S.Ct. at 2648. See also Sawyer v. Whitley, 945 F.2d 812, 816 (5th Cir. 1991) ("[p]rejudice requires a showing of

actual prejudice amounting to a denial of fundamental fairness"), aff'd, ___ U.S. ___, 112 S.Ct. 2514, 120 L.Ed.2d 269.

I must conclude that Hudson has also satisfied the prejudice element. Wilson's identification and his credibility were virtually the state's entire case against Hudson. In addition to being unable to identify Hudson in a lineup, the state's only eyewitness initially picked someone else as the third participant from a photographic display, and this third person was arrested. Wilson was then unable to identify the man in a live lineup. These facts presented to the jury as the heart of the state's case would have cast highly significant doubt upon the reliability of Wilson's identification. Further, the suggestive photographic identification merely intensified the serious consequences of the state's nondisclosure. I conclude that the "fundamental fairness" requisite obviously must fall in the face of significant uncertainty.

The district court then alternatively ruled that absent the applicability of Rule 9(b), Hudson's grounds for relief were meritless. The Court remands for reconsideration of the merits. I would resolve the question.

In its determination, the district court conceded that the information concerning Wilson's prior identification of Larry Jones should have been disclosed since it bore on Wilson's credibility and ability to identify Hudson. Nonetheless, it concluded that the information was not sufficiently material under United States v.

19

*Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), to have changed the outcome.

In making its assertion, the district court appears to have relied primarily on this Court's reasoning in our earlier decision in *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1979). As suggested above, in that case we addressed the state's failure to disclose to Hudson prior to trial that Wilson had been unable to pick him out of a live pretrial lineup. 601 F.2d at 789. This information was in direct conflict with Wilson's trial testimony that he picked Hudson out of the lineup. But we held that the error was harmless since the jury was made aware of the conflict when an officer present during the lineup testified that Wilson had failed to choose Hudson. While we found established trial errors harmless in Hudson's third habeas petition, our conclusion as to their harmless quality was absent the closely related critical information now disclosed in this proceeding. Further, the *Bagley* standard of materiality was not in existence at the time this Court adjudicated his third federal habeas petition.

The *Brady* violation asserted on this appeal was not disclosed to the jury directly or indirectly in any way. In *Brady v. Maryland*, 373 U.S. 82, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court found that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

20

373 U.S. at 87, 83 S.Ct. at 1196-97. This is true as to impeachment evidence as well as exculpatory evidence. Bagley, 473 U.S. at 676, 105 S.Ct. at 3380. To establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Cordova v. Collins, 953 F.2d 167, 171 (5th Cir. 1992). "Suppressed evidence is material `if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting Bagley, 473 U.S. at 682, 105 S.Ct. at 3383).

Information contained in police reports may constitute Brady material. See, e.g., Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991); Lindsey v. King, 769 F.2d 1034, 1036 (5th Cir. 1985). As to Brady's first element, the evidence was clearly suppressed. As a result of the Louisiana law, Hudson did not have access to the police reports at issue at least until late 1986.[12] Further, satisfying Brady's second criterion, there is no question that the evidence is favorable.

As to Brady's third factor, the assessment of prejudice on the merits, that factor may now be impacted to some extent by the heightened awareness of the prejudice issue emphasized by the McCleskey decision. McCleskey is procedural only, but a finding of prejudice under McCleskey makes it at least somewhat more difficult to find a lack of materiality under Bagley. The two evaluations

---

[12] Hudson claims he did not obtain a copy of the police reports until 1988.

21

clearly are not identical. If the withheld evidence at issue is only one part of a substantial and strong body of proof against an accused, the level of prejudice justifying examining the merits would not necessarily be prejudicial to the level of justifying granting the writ. But here the withheld evidence was the critical part of the government's case, because the case was almost entirely grounded on this identity testimony. It follows that the prejudice required in finding materiality on the merits hinges on little more than the requisite prejudice justifying consideration of the merits.

I must conclude that the government's case was seriously undermined by the withholding of evidence critical to identification of the accused by the key witness. I find it inescapable that the evidence withheld was highly material and its unavailability to the defendant casts clear and controlling doubt upon confidence in the outcome of the trial.

In view of the overriding importance of the faulty identification testimony there is no valid reason at all to remand the case to the district court. The record is complete. There is no genuine issue left to decide. Prejudice is certain and the merits are clear.

It appears to me to be a totally unjustifiable misuse of judicial resources to send this case back instead of deciding it. A serious waste of time and money are involved. I cannot conceive on the record with which we are presented that in the future any appellate court could uphold any decision other than that this

22

conviction must be set aside as fatally flawed.  Because of the serious misbehavior of the police, Hudson has amply demonstrated that he has not yet had a fair trial.  The writ should be granted now.