**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-3773

RONNIE JAMES,

Petitioner-Appellant,

VERSUS

BURL CAIN, Acting Warden,
Louisiana State Penitentiary,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

(June 20, 1995)

Before LAY,[1] DUHÉ, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner Ronnie James brought this habeas corpus proceeding in the Eastern District of Louisiana claiming that his guilty plea to a second degree murder charge was involuntary due to his attorney misinforming him of the sentencing results of his plea bargain. For the reasons set forth below, we find that the district court erred in dismissing this suit without prejudice.

---

[1]Circuit Judge of the Eighth Circuit, sitting by designation.

Therefore, we reverse and remand to the district court for a determination of whether James has shown that he will be prejudiced by a dismissal of this petition as abuse of the writ.

## I.  Facts and Procedural History

Ronnie James, the petitioner in this matter, is currently a prisoner in a Louisiana state penitentiary.  In March, 1976, James was convicted of second degree murder after he entered a guilty plea pursuant to a plea bargain.  Upon James' conviction, the state court judge sentenced James to life imprisonment without benefit of probation, parole or suspension of sentence for forty years.[2]

A dispute as to whether James was properly advised as to the terms and effect of the original plea bargain form the basis of this habeas corpus suit.  The parties agree that, at the time of James' offense, a prisoner sentenced to life could not be eligible for parole until the governor of Louisiana commuted the prisoner's life sentence to a fixed term of years.  Commutation was a matter of discretion with the governor.[3]  The source of James' habeas corpus complaint is his alleged lack of understanding as to the two-step parole process—consisting of commutation of the sentence

---

[2]At the time of James' offense, this was the only punishment available for a second degree murder conviction.  The second degree murder statute in effect when James committed the crime for which he was convicted, 1975 La. Acts 380 (repealed 1976), provides in relevant part,:  "Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation, or suspension of sentence for a period of forty years."

[3]The parties agree that at the time of James' sentence it was not uncommon for the Louisiana governor to commute such a life sentence.

followed by a parole hearing. James claims that at the time of his sentencing he was unaware of the commutation requirement and understood only that he would become eligible for parole in forty years. He claims that neither the trial judge nor his defense counsel informed him of the commutation requirement. Because James says that he would not have accepted the plea agreement had he been aware of the initial commutation requirement, he claims that he was prejudiced by entering into an uninformed and, hence, involuntary plea agreement.[4]

This is the second federal habeas corpus suit brought by James. In 1985, James sought habeas corpus relief on the ground that he was unaware of the elements of the crime for which he was convicted. Habeas corpus relief was denied in that suit. Because this is the second federal habeas corpus action brought by James, the district court referred this case to a United States magistrate judge to determine whether his second petition should be dismissed as successive. James' explanation for not asserting this ground for habeas corpus relief in his first petition was that he did not become aware of the commutation requirement until *after* the original habeas corpus proceeding, when he saw a prison memorandum setting forth the requirement.

The magistrate judge in the present proceeding determined that

---

[4]The state record reflects that the trial judge told James that no probation, parole, or suspension of sentence would be available for a period of forty years. The precise wording of the sentence itself states the same. The commutation procedure is not mentioned in the state trial record. The habeas record contains an affidavit of James' trial counsel stating that he does not recall what he told James in 1976 regarding commutation procedure.

3

James had shown cause for not raising the commutation issue earlier but that he had failed to show prejudice. Therefore, the magistrate judge recommended that James' petition be dismissed *with* prejudice. The district court adopted the magistrate judge's report but then dismissed the petition *without* prejudice. The district court reasoned that, until James had served forty years in prison, no determination could be made as to whether he was prejudiced by his misunderstanding as to the parole procedure during the 1976 plea bargain. Therefore, James could not show he suffered prejudice due to the commutation ground until he had served out the portion of his sentence before which either parole or commutation even became available.

James appeals the dismissal of his habeas corpus petition, claiming that a final determination can be reached now in the suit since he is appealing the *voluntariness* of his plea agreement and *not* the capacity of the State to fulfill its promises in that agreement.

## II. Discussion

A district court's decision to dismiss a second or subsequent federal habeas corpus petition for abuse of the writ lies within its sound discretion. *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994). This Court will reverse such a dismissal only if it finds an abuse of that discretion. *Sanders v. United States*, 373 U.S. 1, 18-19 (1963); *McGary*, 27 F.3d at 183; *Hudson v. Whitley*, 979 F.2d 1058, 1062 (5th Cir. 1992). A district court abuses its discretion when it bases its decision on an erroneous legal conclusion or on

4

a clearly erroneous finding of fact. *McGary*, 27 F.3d at 183.

In deciding whether to dismiss a case for abuse of the writ, this Court must apply the same standard used to determine whether to excuse state procedural defaults in a habeas corpus proceeding. *McCleskey v. Zant*, 111 S. Ct. 1454, 1468 (1991); *Jones v. Whitley*, 938 F.2d 536, 540 (5th Cir.), *cert. denied*, 501 U.S. 1267 (1991). Thus, a petitioner's serial habeas corpus petition must be dismissed as an abuse of the writ unless the petitioner demonstrates that there was "cause" not to have raised the points in a previous federal habeas corpus petition and "prejudice" if the court fails to consider the new point. *Jones*, 938 F.2d at 540. The cause standard requires that the petitioner show that some objective factor external to the defense impeded the petitioner's efforts to raise the claim in the first proceeding. *See id.* The independent prejudice standard requires the petitioner to show that he was actually prejudiced by the error of which he complains. *Russell v. Collins*, 944 F.2d 202, 205 (5th Cir.), *cert. denied*, 501 U.S. 1278 (1991). Prejudice is irrelevant if the petitioner does not show cause; however, once the petitioner does show cause, prejudice must be considered. *See Hudson v. Whitley*, 979 F.2d 1058, 1064 (5th Cir. 1992); *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

This Court agrees with both the magistrate judge and the district court that James has shown sufficient cause for not raising the commutation ground in his initial federal habeas corpus suit. Such cause is grounded in the fact that James was apparently

5

unaware of the commutation requirement until he saw a prison memorandum about his status after the denial of his first federal habeas corpus petition.[5]  Therefore, the question for this Court becomes whether or not James has demonstrated sufficient prejudice to establish that he has not engaged in an abuse of the writ.

The petitioner's burden of proving actual prejudice requires showing "'not merely that the errors at. . .trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphases in original).  Stated another way, "[s]uch a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial."  *Murray* 477 U.S. at 494; *see also Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.), *aff'd*, 112 S. Ct. 2514 (1992) ("[p]rejudice requires a showing of actual prejudice amounting to a denial of fundamental fairness").

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent.  *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985).  A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete

_____

[5]It is worthy of note that the State does not challenge the determinations of both the magistrate judge and the district court that James did meet the cause requirement.

6

understanding of the charges against him that his plea cannot stand as an admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992). If the record shows the defendant "understood the charge and its consequences," this Court will uphold a guilty plea as voluntary even if the trial judge failed to explain the offense. *Davis v. Butler*, 825 F.2d 892, 893 (5th Cir. 1987).

James claims that he suffered prejudice by entering an involuntary plea agreement for three reasons. First, he claims that he suffered prejudice because of a change in Louisiana law which has made commutation of sentences much more difficult to attain. Second, James alleges he was prejudiced by entering a plea agreement involuntarily due to the fact he was not fully apprised of the commutation prerequisite to parole. Finally, James claims he was prejudiced by receiving ineffective counsel because his trial attorney did not fully apprise him of the parole procedure and the commutation requirement. Each of these grounds of prejudice will be analyzed separately.

**Change in Louisiana Law.**

A change in parole eligibility procedure during the course of a petitioner's prison term does not give rise to a claim of prejudice. *See McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir.

7

1986) ("[A] petitioner who pleads guilty in reliance on the parole laws in effect at the time of his plea is not entitled to habeas relief because of a change in. . .those laws. . . ."). A plea agreement contains no implied warranty that parole laws will not change. *Id.* Therefore, the change in Louisiana commutation procedures which made parole more difficult to attain does not give James a habeas corpus claim for prejudice.

**James' Misunderstanding of Parole Procedure.**

The United States Constitution does not require the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary. *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987). Accordingly, as long as the defendant understands the length of time he might possibly receive, he is fully aware of his plea's consequences. *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993). A defendant's mere expectation about the commutation and parole process is simply no ground for habeas corpus relief. *Dunn v. Maggio*, 712 F.2d 998, 999-1001 (5th Cir. 1983), *cert. denied*, 465 U.S. 1031 (1984).

The trial procedure itself had nothing to do with any misunderstanding James may have had as to parole procedure and the commutation requirement. It is clear that neither the trial court nor the prosecutor ever affirmatively mislead James as to the Louisiana parole procedure. To the contrary, the trial court provided James with completely accurate information and verified that James fully understood the sentencing ramifications of his guilty plea. Accordingly, James did not enter into his plea

8

involuntarily based on misinformation for which the trial court itself was responsible.

**Ineffectiveness of Trial Counsel.**

The Sixth Amendment guarantee of effective assistance of counsel entitles a criminal defendant to a reasonably effective assistance of counsel given the totality of the circumstances. *See Washington v. Strickland*, 693 F.2d 1243, 1250 (5th Cir. 1982). A petitioner who seeks to overturn his conviction on grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *Hayes v. Maggio*, 699 F.2d 198, 201 (5th Cir. 1983). To demonstrate ineffectiveness of counsel in the plea bargaining arena, James must establish that his trial counsel's performance: (1) fell below an objective standard of reasonable competence and (2) that he was prejudiced by his counsel's deficient performance. *Lockhart v. Fretwell*, 113 S. Ct. 838 (1993); *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987). To succeed in showing prejudice, the habeas corpus petitioner must show that it was in fact reasonably probable that but for the misadvice of his trial counsel he would not have pleaded guilty and would have insisted on going to trial. *See Czere*, 833 F.2d at 63.

The only evidence in the record as to what James' trial counsel did or did not explain to him about the parole procedure is James' own testimony and an affidavit of his trial attorney. James testified that his trial attorney, Ralph Barnett, told him he would "make parole on 40 years" if he pleaded guilty. James also testified that upon talking to his trial attorney, he thought that

9

he would be out of prison after forty years.  Barnett, on the other hand, states that he does not remember anything that he did or did not tell James about parole procedure and the plea agreement.  The only relevant evidence that comes from Barnett's affidavit is that it was his practice at the time to fully apprise his client of the effects of a plea agreement.

This Court has never decided whether erroneous advice by counsel regarding parole eligibility amounts to ineffective assistance of counsel.  *See Czere*, 833 F. 2d at 63 n.6.  However, this Court and others have recognized that affirmatively erroneous advice of counsel as to parole procedure is much more objectively unreasonable than would be a failure to inform of parole consequences.[6]  *See id.; see also Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979) (finding misinformation of parole consequences does constitute ineffective assistance of counsel); *Cepulonis v. Ponte*, 699 F.2d 573, 577 (1st Cir. 1983) (commenting that counsel's *mis*information regarding parole eligibility may be more vulnerable to constitutional challenge than mere lack of information).

The magistrate judge dismissed James' petition with prejudice on the ground that James did not succeed in showing that he had

---

[6]In fact this Court has stated in dicta that a failure of an attorney to inform his or her client as to parole consequences probably does not render counsel's assistance so objectively unreasonable as to rise to the level of ineffective.  *See Czere*, 833 F.2d at 63 n.6 ("Even if the Sixth Amendment does not impose on counsel an affirmative obligation to inform clients of the parole consequences of their pleas, and we doubt that it does (at least absent some special facts), other courts have recognized a distinction between failure to inform and giving misinformation. . . .").

been prejudiced by being left unaware of the commutation requirement which preceded his parole eligibility. After agreeing with the magistrate judge's finding of cause, the district court dismissed the writ without prejudice, stating that the question of prejudice to James could not be answered until the initial forty years of his term had passed. Because James was only seventeen years into his term of life without the benefit of probation, parole or suspension of sentence for forty years, the district court reasoned, James could not succeed in showing prejudice.

The district court erred in dismissing the case *without prejudice* because of its determination that it could not now make an informed prejudice determination in the present case. James' claim of prejudice is ripe for determination because he is complaining of a present injury, not an injury that will occur in twenty years. James' complaint is that his attorney did not inform him of the fact that he would not automatically become parole eligible after forty years, but that, instead, he must have his life sentence commuted to a term of years before becoming parole eligible. His claim is that his counsel was ineffective and this caused him to plead guilty. James is alleging that, but for the ineffective assistance of counsel, he would not have pleaded guilty and he would not be in prison now. Therefore, James' complaint is not about illegal custody in twenty years; James' complaint is about illegal custody now. Because James is complaining about an injury he is currently suffering, and not about an injury in the remote future, it is not premature to consider the prejudice issue.

11

Under the record as it presently stands, this Court has no choice but to hold that the district court should reconsider this habeas corpus petition to evaluate whether James has met the prejudice requirement in order to avoid dismissal of his petition as abuse of the writ. On remand, the district court should determine if James has shown that he was prejudiced by ineffective assistance of counsel.[7] Specifically, the district court should

---

[7]James claims that, if his counsel had told him about Louisiana's two-step parole procedure, he would not have pleaded guilty and, instead, would have gone to trial for first degree murder, a crime that carried a mandatory death penalty. Of course, in determining whether James' counsel was ineffective, the district court will consider the issue as it appeared in 1976, not as it appears now with the benefit of hindsight. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Laverna v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). However, as the following chronology indicates, the critical events in this case occurred during tumultuous times as to the ability of the states to enforce the death penalty for first degree murder:

In 1972, the United States Supreme Court held the death penalty, as applied, to be unconstitutional in *Furman v. Georgia*, 408 U.S. 238 (1972). In response to this action, Louisiana amended its first degree (capital) murder statute. 1973 La. Acts 109 (1973 Law). The 1973 Law provided for a mandatory death penalty for those convicted of first degree murder. In September, 1975, the Louisiana Supreme Court upheld the constitutionality of the 1973 Law. *State v. Roberts*, 319 So.2d 317 (La. 1975), *rev'd sub nom. Roberts v. Louisiana*, 428 U.S. 325 (1976). In October, 1975, Petitioner James committed the murder which is at issue in this petition, and he was indicted for first degree murder. On January 22, 1976, the United States Supreme Court granted writs of certiorari in five separate cases concerning the constitutionality of revised capital murder statutes. *Gregg v. Georgia*, *Jurek v. Texas*, *Woodson v. North Carolina*, *Proffitt v. Florida* and *Roberts v. Louisiana*, all found at 423 U.S. 1082 (1976). On March 31, 1976, on the day he was scheduled to be tried for first degree murder, James pleaded guilty to second degree murder and received the mandatory sentence of life in prison without benefit of parole, probation or suspension of sentence for forty years. As of the date of James' guilty plea, Louisiana law provided that an inmate serving a life sentence was not eligible for parole until that sentence had been commuted to a fixed three years. LA. REV. STAT.

12

evaluate whether the attorney affirmatively misinformed or failed to inform James about the parole process and, if so, whether such misinformation or failure rendered the attorney's actions objectively unreasonable. If the district court does find that James' attorney provided him with objectively unreasonable counsel, then the district court must inquire as to whether James was prejudiced by this ineffective assistance of counsel.

### III. Conclusion

The cause and prejudice inquiries for an abuse of the writ dismissal in this involuntary plea action are ripe for resolution since petitioner James is claiming he entered into an involuntary plea bargain because of ineffectiveness of counsel. Therefore, the judgment of the district court is reversed and the case is remanded for a determination of whether James has demonstrated that he would be prejudiced by having his petition dismissed for abuse of the writ. If the district court determines that James has not abused the writ, it will then reach the merits of his ineffective assistance of counsel claim.

REVERSED AND REMANDED.

---

ANN. § 15:574.4(B) (West 1967). Finally, on July 2, 1976, the United States Supreme Court handed down decisions in the five capital murder cases. *Gregg v. Georgia*, 428 U.S. 153 (1976); *Jurek v. Texas*, 428 U.S. 262 (1976); *Proffitt v. Florida*, 428 U.S. 242 (1976); *Woodson v. North Carolina*, 428 U.S. 280 (1976); and *Roberts v. Louisiana*, 428 U.S. 325 (1976). In *Roberts*, the Court found the 1973 Law to be unconstitutional.