Herman **BARNES**, Plaintiff,

v.

## MISSISSIPPI DEPARTMENT OF CORRECTIONS, Defendant.

Civ. A. No. 2:88 cv 223.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Dec. 6, 1995.

Herman Barnes, Leakesville, MS, Pro Se.

Jo Anne McFarland McLeod, Mississippi Attorney General's Office, Jackson, MS, for defendant.

### OPINION AND ORDER

PICKERING, District Judge.

This cause comes on this date to be heard upon the Report and Recommendation of the United States Magistrate Judge entered herein on February 3, 1995, after referral of hearing by this Court and the Court, having fully reviewed the record, the Report and Recommendation and the Objections thereto filed by Plaintiff, and being fully advised in the premises finds:

This is another of the myriad of habeas proceedings which flow from state court into federal court in most every case involving a life sentence and in many cases involving lesser sentences. This case involves the senseless and vicious murder of two individuals during a robbery. The record reflects and Plaintiff Herman Barnes confessed that on July 23, 1982, Plaintiff and Donald Ray Abram, robbed a rural convenience store. According to Barnes' two and one-half page confession, the robbery had been planned for "about one week." The only person present in the store at the time of the robbery was the store clerk, a "girl" who was ordered to get on the floor. She "laid face down on the floor." Plaintiff Barnes stated that after the robbery was completed and co-defendant Abram left the store "I shot the girl in the back of the head while she was laying down." As Barnes and Abram were leaving the store, an elderly gentleman pulled up to the store in a pickup truck. In fear that the elderly gentleman might report the description of Barnes' "black Volkswagen," Barnes turned his vehicle around and went back to the store. "The man was standing over by the coolers, he was going down I shot him in the head." The robbery netted some $560.00.

Plaintiff's Petition for Habeas Corpus was originally denied by this Court on the basis of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct.

3037, 49 L.Ed.2d 1067 (1976). *Withrow v. Williams*, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993), was decided between the time the Magistrate Judge made his first Report and Recommendation to the Court and the time that the Court entered its Judgment of Dismissal. An appeal was taken to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed in part and vacated and remanded in part. The remand was for further proceedings before this Court relative to the voluntariness issues raised by Barnes regarding his confession. This matter was referred to a different Magistrate Judge for another Report and Recommendation. That Report and Recommendation, and Plaintiff's objections to this Report and Recommendation, all relating to the voluntariness of Plaintiff's confession to two murders present the issues now before this Court.

The Magistrate Judge has very carefully considered the record and has analyzed the controlling law in detail. This Court finds that the Report and Recommendation of the Magistrate Judge is factually and legally correct and that said Report and Recommendation should be adopted as the opinion of this Court.

Barnes in his Objection to the Magistrate Judge's Report and Recommendation argues that the Report and Recommendation of the Magistrate Judge should be rejected because it is clearly erroneous. He argues that under *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), even though there might be evidence in the record to support the Report and Recommendation that nevertheless it is clearly erroneous when "the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed." The fallacy of this argument is that this Court is not left with a "firm conviction that a mistake has been committed." But to the contrary, this Court is left with a definite and firm conviction that the conviction was correct.

■ Barnes acknowledges that the case of *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and other controlling case law "prohibit habeas relief" for an al-

leged violation of state rules that do not implicate federal constitutional questions. Barnes further goes on to state that "the Magistrate Judge has clearly indicated that Barnes has established a case under state law, but has failed to establish a constitutional claim under federal law." Barnes misunderstands the Report and Recommendation of the Magistrate Judge.

While it is true that the Magistrate Judge concluded that "the delay in bringing Barnes before a neutral and detached judicial officer for his initial appearance in this case is cause for concern" and that "the delay in the case *sub judice* is not condoned," the Magistrate Judge did not make a finding that this established a case under state law. Barnes confuses what the Magistrate Judge found in regard to the delay in bringing him before a judicial officer and what the Magistrate Judge said in regard to Barnes' argument that the trial court erred in refusing to order the State to furnish the names of the confidential informants who gave information which led to Plaintiff's arrest. In regard to the latter issue, the Magistrate Judge did state "that issue is a matter of state law. The *alleged* violation of state rules is not a constitutional violation or a violation of federal law cognizable for federal habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984)."

The Magistrate Judge stated in a footnote that "the *Abram* decision [the decision of the Mississippi Supreme Court reversing the conviction of Plaintiff's accomplice and co-defendant] was also based, in part, upon a specific principle of state law which provides for prompt initial appearances." The Magistrate Judge recognized that in reversing the conviction of Barnes' co-defendant in the *Abram* decision, the Supreme Court of Mississippi relied in part upon a specific Mississippi state law relative to initial appearances. The Magistrate Judge did not, however, make any finding that Barnes has established a state law claim for failure to be promptly carried before a judicial officer for an initial appearance. Neither did he find that the delay was not in violation of state law. He simply was not called upon to make such a decision. He simply found that *even*

*if* this was a violation of state law that violation of state law per se is not a ground for federal habeas corpus relief.

Barnes argues that since the Magistrate Judge found that he has established a claim under state law but not federal law that his Petition should be dismissed without prejudice. This Court has no control over what the state court should or should not do on a petition for habeas corpus considering state issues. This action was brought under 28 U.S.C. § 2254, the federal statute on habeas relief. How a state court rules on state law questions will be up to that state court.

■ Plaintiff Barnes' most strenuous argument is that since the conviction of his co-defendant was reversed in *Abram v. State,* 606 So.2d 1015 (Miss.1992), that the *Abram* case should control this case. The Plaintiff ignores the finding of Magistrate Judge Sumner that "the only common thread which Barnes shares with *Abram* is the length of delay between arrest and initial appearance. In all other respects, the circumstances and environment surrounding the *Abram* confession *were radically different* from the circumstances pertaining to Petitioner." (Emphasis added.) The Magistrate Judge correctly pointed out that the Mississippi Supreme Court in the *Abram* case was concerned with testimony about inducements, promises, and repeated attempts to prompt statements from Abram. This Court further notes that the opinion in the *Abram* case outlines testimony regarding threats. The record in the Barnes case contains no evidence regarding discussions of inducements, promises, or threats. Barnes was not questioned nearly as extensively as was his co-defendant Abram.

■ Although Barnes' most strenuous objection is that *Abram,* a state court decision, should control this case, the most serious issue that he raises is the failure of law enforcement officers to carry him before a magistrate for something more than three days. This period included a weekend.

The Fifth Circuit in remanding this case cited *Withrow v. Williams, supra.* Prior to *Withrow* the Supreme Court in *Powell, supra,* had held that when a state has given a full and fair opportunity for a state prisoner to litigate a claim under the Federal Constitution's Fourth Amendment that such state prisoner is barred from seeking federal habeas corpus on the basis that his conviction was the result of evidence obtained through an unconstitutional search and seizure. In *Withrow* the police decided not to give Williams the Miranda warning and obtained a confession from him. After Williams gave his confession, the police then gave the Miranda warning and the defendant (Williams) gave additional inculpatory statements. Although acknowledging in *Withrow* that the Miranda warning is not a constitutional mandate, nevertheless the Court held that failure to give the Miranda warning was not covered by the *Powell* procedural bar to federal habeas. The Court in *Withrow* concluded that when the Miranda warning is not given and a confession is obtained that such confession must be excluded and failure to exclude such confession can be the basis for habeas corpus relief by federal courts. That case was remanded to the trial court to determine whether or not the statements given after the Miranda warning were or were not voluntary and whether or not due process was or was not thus implicated.

In this case, unlike the *Withrow* case, the record shows without contradiction that Barnes was given his Miranda warnings prior to any statement. In fact Plaintiff Barnes was given his Miranda warnings on three separate occasions and he signed written waivers on two of those occasions, *all* before he gave his confession. If he had been carried before a judicial officer, he would not likely have been advised of any more than he was advised when he was given his Miranda warnings. This case is altogether different from both the *Withrow* and the *Abram* cases. The record reveals Plaintiff's confession was not coerced directly or indirectly. The Plaintiff's confession was voluntary.

Plaintiff Barnes' argument that the *Abram* case should control this case is misplaced. The facts in the *Abram* case are quite different from the facts in this case. The Mississippi Supreme Court, not a federal court, handed down the *Abram* decision and although the Mississippi Supreme Court in

*Abram* reversed the conviction of *Abram*, Plaintiff's co-defendant, that same Court declined to reverse Plaintiff's conviction, but instead affirmed both of Plaintiff Barnes' murder convictions. 507 So.2d 380 (Miss. 1987); 506 So.2d 977 (Miss.1987).

■ Barnes in his objection to the Report and Recommendation of the Magistrate Judge again complains of the trial court's failure to compel the State to reveal the identity of the two confidential informants who gave information that caused the arrest of Barnes. Barnes alleges that the failure to compel the identity of the confidential informants is in conflict with *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Barnes misconstrues *Brady. Brady* only requires the production by the State of exculpatory evidence. There is absolutely no indication in the record that any information the two confidential informants provided was exculpatory of Barnes. To the contrary, the record clearly indicates that the information given by these two individuals inculpated rather than exculpated Plaintiff. The Plaintiff's argument in regard to *Brady* is likewise misplaced. What plaintiff is attempting to accomplish by this argument is not to obtain evidence favorable to him, because there was never such evidence from these witnesses, but rather what Plaintiff is attempting to require state law enforcement officers to provide are the names of the two informants "who told on him." There is no federal law, statute or judicial precedent, that requires state courts to require the revelation of the names of confidential informants in state court proceedings.

This Court has already noted that the Report and Recommendation of the Magistrate Judge is well reasoned and factually correct. The rationale set forth in the Report and Recommendation of the Magistrate Judge and this Court's rationale in ruling on Plaintiff's objections, as set forth in the preceding parts of this opinion, form the *exclusive* basis for this Court's decision. Magistrate Judge Sumner correctly analyzed whether or not the confession of Plaintiff was voluntarily given and whether or not Plaintiff knowingly waived his right to counsel before he gave that statement. Judge Sumner thoroughly analyzed this case under controlling precedent, by which this Court is bound and is the precedent that the Court has and will follow so long as it is the law. However, it is the opinion of this Court that under controlling case law the scope of review in habeas corpus is entirely too broad. This Court believes that the only issue that should be analyzed, some ten to fifteen years after a crime is committed is whether or not an innocent person was, or may well have been, convicted. In this particular case, the result would have been the same. But if the issue of guilt or innocence was the only issue that could be presented in federal habeas corpus many years after the crime occurs, it would simplify and speed up the process and would provide more certainty of a final result.

As one writer has written, "Habeas corpus is in disarray."[1] It has been described as "the most controversial and friction producing issue in the relation between the federal courts and the states."[2] The Supreme Court has acknowledged that in regard to habeas corpus it has "not 'always followed an unwavering line' ... and our decisions on the subject do not all admit of ready syntheses." *McCleskey v. Zant,* 499 U.S. 467, 489, 111 S.Ct. 1454, 1467, 113 L.Ed.2d 517, 541 (1991). (Other citations omitted.)

■ Congress and the Supreme Court have adopted a number of procedural bars to federal habeas corpus. A state prison inmate must exhaust state remedies before seeking federal habeas corpus. 28 U.S.C. § 2254(b) and (c). If he fails to raise issues that could have been raised in state court, he is barred from federal habeas corpus for default. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Most successive federal writs will be barred under "abuse of the writ." *James v. Cain,* 56 F.3d 662, 665 (5th Cir.1995); citing *Jones v. Whitley,* 938 F.2d 536, 540 (5th Cir.1991), *cert. denied,* 501 U.S. 1267, 112 S.Ct. 8, 115 L.Ed.2d 1093 (1991). Most Fourth Amend-

---

**1.** Charles Allen Wright, 81 Mich.L.Rev. 802.

**2.** 17 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure: Jurisdiction 558 (1978).

ment issues will be procedurally barred from federal habeas corpus if a state provides a chance to fully and fairly litigate such an issue.[3]

The language of *McCleskey, supra*, and its repeated reference to the finality of proceedings—"perpetual disrespect for the finality of convictions disparages the entire criminal justice system," *Id.* at 543, indicated that the Supreme Court had serious reservations about what habeas corpus is doing to the criminal justice system. However, two years later in *Withrow, supra*, the Court was again talking about the "inviability of the human personality and ... our distrust of self-deprecatory statements." 507 U.S. at ——, 113 S.Ct. at 1753, 123 L.Ed.2d at 419. As the Court noted in *McCleskey*, it does not always follow an "unwavering line."

What effect has this had on those intended to be protected by the great writ? In one study regarding a limited number of 1994 habeas corpus cases the writ was granted in approximately 1 percent or seventeen out of the 1626 cases filed.[4] These statistics do not mean that seventeen innocent people were set free. It means that as to seventeen persons convicted of crime the state had to make an election to turn them loose or provide a new trial for procedural default. That means that more than sixteen hundred prisoners were frustrated. Habeas corpus as it now exists creates unfulfilled expectations in the minds of prison inmates. It does not create respect for the law even with those for whom it is designed to protect. If learned judges and legal authorities are confused by all of the procedural paths that must be followed in habeas corpus, what must the layman think of such a labyrinth?

It has long been accepted that swift and certain punishment is an effective deterrent to crime. The hallmark of our judicial system today in the area of criminal convictions is a lack of finality, a lack of certainty and a lack of swiftness. The tortoise is a roadrunner compared to the American judicial system.[5]

In 1906 Dean Roscoe Pound wrote an article entitled "The Causes of Popular Dissatisfaction with the Administration of Justice."[6] In pointing out that there has always been criticism of the administration of justice, Dean Pound quoted an ancient writer who cited 155 abuses in legal administration and said that chief among the abuses "of the degenerate times" in which he lived was execution of judges for "corrupt or illegal decisions had ceased."[7] Dean Pound further wrote that criticisms of the justice system in 1906 centered around "Uncertainty, delay, and expense, and above all the injustice of deciding cases upon points of practice, which are the mere etiquette of justice."[8] "The inquiry is not, What do substantive law and justice require? Instead, the inquiry is, Have the rules of the game been carried out strictly?"[9] He noted that "The law does not respond quickly to new conditions. It does not change until ill effects are felt; often not until they are felt acutely."[10] "In this sense law is often in very truth a government of the living by the dead."[11] Dean Pound concluded on an optimistic note stating "we may

---

**3.** *Stone v. Powell, supra.*

**4.** Habeas Corpus in State and Federal Courts, National Center for State Courts, State Justice Institute, at page 61.

**5.** This Court recognizes that in this particular case this Court has been responsible for much of the delay. This Petition for Habeas Corpus was filed before this particular Judge came on the bench. Although the docket in this Court is now current, there was a considerable back log at that time. This case has been to the Fifth Circuit and back as previously mentioned. If this was the exceptional case, the comments and remarks of this Court would be inappropriate, but it is not the exceptional case. Rather, it is routine for federal district courts to be considering habeas corpus petitions ten to fifteen years after a crime occurs. This Court is committed to seeing that habeas corpus cases before this Court in the future move as rapidly as possible, still giving a fair hearing as required under controlling precedent.

**6.** 29 ABA Ann.Rep. 395 (1906).

**7.** *Id.*

**8.** *Id.* at 408.

**9.** *Id.* at 406.

**10.** *Id.* at 400.

**11.** *Id.* (citation omitted).

look forward confidently to deliverance from the sporting theory of justice; we may look forward to a near future when our courts will be swift and certain agents of justice, whose decisions will be acquiesced in and respected by all." [12] Unfortunately, Dean Pound's prophesy has not been fulfilled. During the ninety-year interval since his article, the problem has compounded. Habeas corpus ten to fifteen years after a crime has been committed, or even five years after a crime has been committed, is not swift and it does not bring respect for the law or the judiciary.

Constitutional issues that do not implicate the likelihood of the conviction of an innocent person should not be the subject matter of federal habeas corpus ten to fifteen years after a crime has been committed. After such a time delay, it is almost impossible to conduct another trial that would be fair to the victim, the State, the public or the defendant. It is difficult for this Court to remember what it did last month, much less ten or fifteen years ago. The likelihood that witnesses are deceased, moved, or are no longer available is great. Law enforcement officers change positions and vocations during such a lengthy period. Many prosecutors change jobs and are replaced by others during such a time frame. Files and records are lost or misplaced. Memories are not as fresh. The likelihood of conducting a fair trial for all parties, ten to fifteen years after a crime is committed, is highly unlikely. Common sense dictates that a trial that takes place many years after a crime is committed is likely to be far less reliable than a trial that occurs a relatively short time after the incident.

Murder trials not only consume a tremendous amount of law enforcement and judicial resources, but it is a tremendously wrenching experience for the families of the victims. They suffer the loss of their loved one from a senseless act of depravity, they must endure the ordeal of the first trial and then years of uncertainty while the case is on appeal and then habeas corpus and the threatened ordeal of another agonizing trial. If innocence is implicated, by all means, the system must provide protection. But ordering states to provide a new trial or release a convicted and guilty murderer is too high a price to pay for procedural mistakes that do not implicate innocence. Yet, that is the issue that is before this Court, should it require the State of Mississippi either to turn this murderer loose or to provide him a new trial these many years after his crime?

Some thirty years ago there began a judicial trend to interpret the Constitution in ways that it had never been interpreted so as to protect those responsible for crime from abuses by those charged with the responsibility of law enforcement. While that certainly was a laudable goal and good intentions are not questioned, the extent of the changed interpretation and the protracted delay in resolution of cases has produced distrust on the part of the law-abiding public and it has undermined the administration of justice and produced an almost complete lack of finality to criminal convictions.

From 1964 to 1994 the population in the United States increased by roughly 37%. On the other hand violent crime increased 500% or thirteen and one-half (13½) times as rapidly as the population. *Statistical Abstracts of the United States,* 1994 and 1964. Criminal convictions since the early 1960's have had far less finality than they had prior to 1960. This Court is not suggesting that the increase in crime is caused exclusively by changing judicial interpretations and lack of finality as to convictions. This Court is of the opinion, however, that the lack of swift and certain punishment and the lack of finality in criminal convictions are contributing factors to the dramatic increase in crime and that the general attitudes which produced this change in the interpretation of the Constitution have permeated society in general and have been among the major contributing factors in increased crime. During the past thirty years there has been far less tendency to hold people accountable and responsible for their actions and a far greater tendency to excuse bad behavior. When respect for the judiciary decreases, the effectiveness and existence of a democracy are threatened.

**12.** *Id.* at 417.

We talk about Fifth Amendment rights, but the Amendment itself is seldom quoted. As it is applicable to this case, the Fifth Amendment simply says "no person ... shall be compelled in any criminal case to be a witness against himself." The word "compelled" was long thought to be limited to a meaning of force, coercion, duress or such.

One can eloquently write that the rights of none of us are secure unless the rights of the least are secure. But somewhere along the way, we have become confused as to what rights are paramount. Is the right of one charged with a crime to be carried before a magistrate within 72 hours more important than the right of a law-abiding citizen to be free from assault, robbery and brutal murder? If a choice must be made in such a situation, it should be easy. The choice should be to protect the law-abiding citizen. But that is not always the choice that has been made by controlling case law.

The Supreme Court in *McCleskey v. Zant, supra,* traced the history and wrote an extensive opinion on habeas corpus in the United States. The Court noted that "abusive petitions in recent years have threatened to undermine the integrity of the habeas corpus process.... 'Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.'" *Id.,* 499 U.S. at at 496, 111 S.Ct. at 1471.

The *McCleskey* Court noted "one of the law's very objects is the finality of its judgments ... 'Without finality, the criminal law is deprived of much of its deterrent effect.' ... The power of the state to pass laws means little if the state cannot enforce them.... Perpetual disrespect for the finality of convictions disparages the entire criminal justice system.... There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern...." *Id.* at 490–492, 111 S.Ct. at 1468.

In the *McCleskey* case the Supreme Court in referring to "cause and prejudice" noted that even if a petitioner could not show cause or prejudice that nevertheless that there was "another narrow exception." "[T]hese are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice." *Id.*

Procedural constitutional issues can still be protected without considering them by habeas corpus ten to fifteen years after a crime. These procedural constitutional issues can be raised on direct appeal and if appropriate, taken to the U.S. Supreme Court on a writ of certiorari. The state courts are now well versed in what is required under the Constitution of the United States. The Mississippi Supreme Court in the *Abram* decision demonstrated quite clearly that it will reverse without hesitation a conviction that is contrary to either the state or federal constitution. It is the height of judicial arrogance to presume that only federal courts can protect procedural and constitutional safeguards, particularly at a time when we are experiencing such drastic and dramatic increases in crime.

Constitutional rights that protect the innocent from being convicted should never be compromised, should never be diminished, and should be maintained at all costs, even if it does mean that an occasional guilty person goes free. The American justice system never works so well as when an innocent man goes free.[13] And as has often been said, it is far better that a guilty person goes free than that an innocent person is convicted. But the question ten to fifteen years after trial ought to be just that—the question of guilt or innocence. It should not be, "Has the trial been conducted in accordance with all the rules?" Habeas corpus relief on purely procedural grounds raises a rather simple question: Should a convicted felon, who has been found guilty of a crime, be freed, not because of his innocence but because the rules were not strictly followed? Faced with such a choice, and this writer submits that is the only choice submitted when habeas corpus is granted on purely procedural grounds, this Court, if it had the power, would consid-

---

13. A parallel or similar statement is found in an inscription in the U.S. Department of Justice Building, Washington D.C., Attorney General's Rotunda. "The United States wins its case whenever justice is done to one of its citizens in the courts."

er the Great Writ only in instances where actual innocence is alleged. This is not to say that violation of procedural and constitutional safeguards should not be taken into account. Violation of procedural and constitutional safeguards by themselves may be serious enough to implicate the question of guilt and demonstrate probable innocence. One charged with a serious crime must always be presumed innocent and the state must always be required to demonstrate guilt by a high degree of proof. Such protection is granted when the jury is instructed that the government must prove its case beyond a reasonable doubt. This Court has difficulty with the concept that guilty felons should be turned loose on purely procedural grounds and with federal courts squandering sparse judicial resources in cases where innocence is not even alleged.

Those who favor granting habeas corpus for purely procedural infringements seem to argue that such a use of habeas corpus is necessary in order to ensure that police officers follow constitutional and judicial procedural mandates (Miranda). Do we have more cause today to fear overzealous law enforcement officials arresting those guilty of crimes or to fear criminals who are committing serious felonies?[14] To this writer the answer should be obvious. If a police officer makes a mistake in carrying out his duties, should a guilty criminal be rewarded and the victim and society be punished? The answer should be no. We should punish law enforcement officers who violate their oaths, but turning convicted criminals loose without regard to their guilt or innocence is too high a price for society to pay for mistakes on the part of law enforcement officers which do not implicate the question of innocence. It is not too much to require of a convicted felon to say that federal courts will not consider a petition for habeas corpus unless you can demonstrate probable innocence. As Justice Holmes said, "At the present time in this country, there is more danger that criminals will escape justice than that they will be subjected to tyranny." Dissenting opinion in *Kepner v. United States*, 195 U.S. 100, 134, 24 S.Ct. 797, 806, 49 L.Ed. 114, 126 (1904).

The quantum leap that was made in the judicial expansion of the power of federal courts to issue habeas corpus came at a time that discrimination in most every form was under attack. The attack on discrimination was entirely appropriate. Discrimination is invidious and should have been under attack. However, one cannot consider what was taking place in American society during that period and not conclude that the development of the exclusionary rule and the expansion of habeas corpus power was in part brought about by a desire to see that minorities and others who did not have great economic power were protected. What the current continuing advancement of such a philosophy ignores is that quite frequently those who bear the brunt of lawlessness are the same minorities and others with little economic power sought to be protected in the first place.

Making it difficult or impossible to punish those guilty of heinous crimes, shielding the guilty from punishment, is one step down the road to anarchy. Anarchy is the cruelest form of tyranny. While what was sought to be accomplished was to protect individual members of society who might not have been given every procedural right which we would prefer be given to all citizens, the result has been to move toward a society where those who are most violent or vicious and those who have the biggest gun can dictate to those not inclined to resist or not inclined to violence. They can dictate that children stay off the streets or that they become victims of drive-by shootings. They can dictate that the weak and elderly stay in their homes or they will be the victims of crime. They can dictate that even those who stay within their

---

**14.** Current events indicate that there are instances of police abuse and this should be dealt with. But turning guilty criminals loose is no way to deal with the problem. For almost thirty years the courts have seemed to accept the argument that the exclusionary rule and other judicial safeguards will control overzealous law enforcement. It has not done so. And besides, it makes the wrong people pay, victims and society in general. Punishment should be directed toward the violators, the guilty criminal and the overzealous law enforcement officer, not the victims and not the law abiding public. While there are *too many* cases of police abuse, the number pales when compared to the number of murders, rapes, robberies, car-jackings, and kidnappings.

home must live in fear of criminal violence. That is far more cruel than denying to a known murderer a procedural right regardless of how important that right is. A primary purpose of the Constitution was to give structure to government, to provide protection, and to allow our citizens to pursue an orderly and peaceful life without fear. In the last few years anarchy, not an orderly and peaceful life, is what has been fostered upon many low income communities where crime, not law and order, dominate.

It is a fundamental responsibility of government to protect the weak from the strong, but it is also a fundamental responsibility of government to protect the meek from the mean—the law-abiding from the law violating. The Constitution was adopted for the benefit and protection of the American people. The American people were not created to serve the Constitution. Constitutional rights per se are not objectives of the Constitution. The objective of the Constitution is the protection of the American people. Whenever the Constitution is interpreted so that constitutional rights per se become the objective, rather than interpreting the Constitution as a protection for the American people, a disservice is done to the Constitution. It is a disservice to the Constitution when it is constructed so that the guilty go free and the law-abiding citizen is left unprotected.

The fact that the expansion of habeas corpus was begun with all good intentions does not alter the consequences. History records that not all grief is created by evil men with evil designs. Much of the grief experienced by people throughout the ages has come about by well-meaning but misguided thinking.

One of the ironies of the modern-day criminal justice system is that jurists with two or more law clerks to assist in researching the law and ample time to reflect, meditate and seek counsel and advice second guess law enforcement officers. These officers are also sworn to protect the people, are frequently performing their duties with scarce manpower, even more limited funding, and often have to make split second decisions. They are being subjected to ever increasing and more complex and violent criminals who not only curse and spit upon them but frequently attack them with guns, knives, or other weapons. Despite the fact that federal judges make their decisions in quite, isolated chambers, we do not make decisions in a vacuum. Our decisions affect real people and the way they live their lives and the way they are protected or not protected. Our decisions affect victims and law-abiding citizens as well as those already convicted of a crime by a jury and before us on habeas corpus.

Judges and legal scholars throughout the ages have warned against what we are now doing. One of the oldest recorded codes of laws provides: "The innocent and the just you shall not put to death, nor shall you acquit the guilty." [15] "He threatens the innocent who spares the guilty." *Coke,* 4 Rep. 45. "Justice, though due to the accused, is due to the accuser also." Justice Cardoza, *Synder v. Com. of Mass.,* 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 687, 90 A.L.R. 575 (1934).

Federal habeas corpus proceedings involving state court convictions as to crimes committed ten to fifteen years ago should be limited exclusively to those cases which implicate a fundamental miscarriage of justice. It should be limited to those cases which present the question of whether or not an innocent person has or may well have been convicted. A judicial system that routinely cannot bring finality to a criminal conviction in less than ten years shows a system unable or unwilling to set its house in order. The future of America depends not only upon whether Congress and the President are willing and able to face and solve hard problems, but also on whether the judiciary is able and willing to face and solve hard problems. A justice system that favors form over substance is doing mankind no favor and does not serve the ends of justice. How we have reached a conclusion to protect the guilty at the expense of the law abiding is implausible and difficult to understand.

15. The Bible, Exodus 23:7.

Regardless of this Court's feelings that habeas corpus is overly broad, nevertheless, this Court must abide by prior decisions of the Fifth Circuit Court of Appeals and the United States Supreme Court. In adopting the reasoning and rationale of the Report and Recommendation of the Magistrate Judge and overruling Plaintiff's objections thereto, this Court has followed its understanding of controlling precedent. It is therefore ordered that the Report and Recommendation of the Magistrate Judge be and the same hereby is adopted as the finding of this Court and the Complaint is hereby dismissed with prejudice. A separate judgment will be entered herein in accordance with this rule as required by Rule 58 of the Fed. R.Civ.P.